**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GHODRAT FARAHANI, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )    Civil Action No. |
|  | )    25-cv-13285-FDS |
| VERIZON WIRELESS | ) |
| SERVICES, LLC, et al., | ) |
|  | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER ON MOTION OF DEFENDANT MCCARTHY,
BURGESS & WOLFF, INC. FOR JUDGMENT ON THE PLEADINGS**

**SAYLOR, J.**

This is a lawsuit filed by a consumer against a cellphone provider and various related entities.  Plaintiff Ghodrat Farahani alleges that defendants Cellular Sales of Massachusetts, LLC and Verizon Wireless Services, LLC fraudulently obtained his signature on multiple agreements concerning a cellphone installment plan.  He further alleges that defendants Jefferson Capital Systems, LLC; McCarthy, Burgess & Wolff, Inc. ("MB&W"); and Credit Control, LLC then unlawfully attempted to collect on that invalid debt.  He is proceeding *pro se*.

Defendant MB&W has moved for judgment on the pleadings as to all claims against it. For the following reasons, the motion will be granted in part and denied in part.

**I.    Background**

The following facts are set forth as alleged in the amended complaint.

**A.    Parties**

Ghodrat Farahani is an individual who resided in Rehoboth, Massachusetts, during the relevant time in 2021.  (Am. Compl. ¶ 11, Dkt. No. 10).

Verizon Wireless Services, LLC is a limited liability company that sells cellular services nationwide.  (*Id.* ¶ 13).

Cellular Sales of Massachusetts, LLC is a limited liability company that operates a retail electronics store in Swansea, Massachusetts.  (*Id.* ¶ 12).  Cellular Sales is a Verizon retailer. (*Id.*).

Jefferson Capital Systems, LLC is a limited liability company that collects consumer debt.  (*Id.* ¶ 14).  It allegedly purchased and attempted to collect Farahani's debt to Verizon. (*Id.*).

McCarthy, Burgess & Wolff, Inc. is a corporation that at some point held Farahani's debt. (*Id.* ¶ 15; MB&W Answer ¶ 15, Dkt. No. 19).[1]  The complaint alleges that MB&W is a law firm that acted as a debt collector for Jefferson Capital.  (*Id.*).  MB&W denies that it is a law firm and that it acted on behalf of Jefferson Capital.  (MB&W Answer ¶ 15).

Credit Control, LLC is a limited liability company that collects debts in Massachusetts. (Am. Compl. ¶ 16).  The complaint alleges that Credit Control acted as a debt collector for Jefferson Capital.  (*Id.*).

**B.**     **Allegations of the Complaint**

According to the complaint, on June 11, 2021, Ghodrat Farahani went to a store in Swansea, Massachusetts, to address ongoing problems with cellular service at his home.  (Am. Compl. ¶¶ 17, 32).  The store was operated by Cellular Sales, although it displayed Verizon branding and retailed Verizon products.  (*Id.* ¶ 17).  Farahani told a salesperson in the store that he was interested in trying Verizon service.  (*Id.* ¶ 22).  He intended to purchase a new service

---

[1] The complaint incorrectly identifies that defendant as "McCarthy, Burgess & Wolff" rather than "McCarthy, Burgess & Wolff, Inc."  (MB&W Answer 1).

plan to use with his current Samsung phone. (*Id.*). The salesperson allegedly told Farahani that his current phone was not compatible with Verizon but that he was eligible for a "free phone" promotion as long as he signed up for Verizon that day. (*Id.* ¶¶ 22-24).

The salesperson then presented Farahani with an electronic tablet and asked him to sign. (*Id.* ¶ 26). The tablet allegedly displayed a blank screen. (*Id.*). According to the complaint, the salesperson told Farahani that he needed to sign to authorize the Verizon service and that a copy of the contract would be sent to him by email. (*Id.* ¶ 27). The complaint alleges that Farahani signed the blank screen not knowing that he was in fact signing four agreements: an installment loan agreement with Verizon with a total obligation of $565; a Verizon customer agreement with a mandatory arbitration provision; a Cellular Sales dispute resolution agreement with a mandatory arbitration provision; and a Cellular Sales bill of sale. (*Id.* ¶ 29).

Following the transaction, Farahani returned to his home with his new phone. (*Id.* ¶ 32). According to the complaint, he then discovered that Verizon cellular service did not cover Rehoboth. (*Id.* ¶¶ 32-34). In the subsequent days, Farahani contacted Verizon support several times to attempt to fix the service issue. (*Id.* ¶ 36).

Farahani received his first billing statement from Verizon on June 21, 2021. (*Id.* ¶ 37). The billing statement included a line item for "device payment (1 of 24)" costing $23.58. (Verizon Bill, Dkt. No. 10-1).

Farahani then attempted to call Verizon to cancel the service. (Am. Compl. ¶ 40). At some point between June 25 and June 28, Farahani returned to the Cellular Sales store to cancel the service and return the phone. (*Id.* ¶¶ 41-44). Cellular Sales declined to do so, citing the expiration of the 14-day return/cancellation period. (*Id.* ¶ 45).

In the following weeks, Verizon canceled Farahani's cellular service. (*Id.* ¶ 48). He

3

continued to receive bills for the device payment over the following years, however. (*Id.* ¶¶ 48-49). Farahani did not pay those bills. (*Id.*).

The complaint alleges that at some point Verizon placed the device-payment debt with Jefferson Capital, MB&W, and Credit Control. (*Id.* ¶ 50). Those entities then allegedly engaged in "aggressive" debt collection, including repeated calls and notices. (*Id.* ¶ 51). Jefferson Capital, MB&W, and Credit Control also allegedly reported the debt to credit-reporting agencies. (*Id.* ¶ 52). The debt allegedly remained reflected on Farahani's credit reports from 2021 through August 2025. (*Id.* ¶ 55). During that time, Farahani's credit score fell to 606. (*Id.* ¶ 54). The complaint alleges that the damage to Farahani's credit score resulted in twice having an application for an Amazon Visa credit card denied, losing housing opportunities, and having to obtain a limited credit card with a 30% interest rate. (*Id.* ¶ 65).

On January 16, 2023, Farahani sent a demand letter under Mass. Gen. Laws. ch. 93A to Verizon, Cellular Sales, MB&W, and Credit Control disputing the debt and requesting settlement. (Jan. 2023 Letter, Dkt. No. 10-2). According to the complaint, collection attempts and reporting to credit agencies nonetheless continued. (Am. Compl. ¶ 80). On December 1, 2024, Farahani sent a Chapter 93A demand letter to Jefferson Capital. (Dec. 2024 Letter, Dkt. No. 10-3). On August 14, 2025, Farahani sent Jefferson Capital a dispute and demand letter under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, and Mass. Gen. Laws ch. 93A. (Aug. 14, 2025 Letter, Dkt. No. 10-4). The next day, he sent another demand letter to Jefferson Capital, Verizon, and Cellular Sales. (Aug. 15, 2025 Letter, Dkt. No. 10-5). The debt collection efforts and adverse credit reporting did not cease until Farahani brought this action. (Am. Compl. ¶¶ 60-61).

### C.     **Procedural Background**

On August 25, 2025, plaintiff filed this action against all defendants in Massachusetts

4

Superior Court.  Defendants then removed the case to this court on the basis of the federal-law claims.

The amended complaint asserts thirteen counts:  (1) a claim for declaratory judgment that the arbitration clause is unenforceable against Verizon and Cellular Sales; (2) unfair or deceptive practices in violation of Mass. Gen. Laws ch. 93A against all defendants; (3) unfair debt-collection practices in violation of Mass. Gen. Laws ch. 93, § 49 against Jefferson Capital, MB&W, and Credit Control; (4) fraud and intentional misrepresentation against Verizon and Cellular Sales; (5) negligent misrepresentation against Verizon and Cellular Sales; (6) slander of credit and defamation against all defendants; (7) negligence against all defendants; (8) breach of contract against Verizon and Cellular Sales; (9) tortious interference with prospective business relations against all defendants; (10) intentional and negligent infliction of emotional distress against all defendants; (11) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, against Verizon and Cellular Sales; (12) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, against Jefferson Capital, MB&W, and Credit Control; and (13) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., against Jefferson Capital.  Defendants Credit Control, MB&W, and Jefferson Capital filed answers to the amended complaint.

Plaintiff has moved for partial summary judgment on Count 1.  He seeks a declaratory judgment that no valid arbitration agreement exists between himself and Cellular Sales and Verizon.  Cellular Sales and Verizon then filed a motion to compel arbitration or, alternatively, to dismiss for failure to state a claim.[2]

---

[2] Plaintiff's motion for summary judgment and the motion of defendants Cellular Sales and Verizon to compel arbitration will be addressed in a separate memorandum and order.

On January 30, 2026, MB&W filed a motion for judgment on the pleadings under Rule 12(c) as to all counts against it.

## II.    Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole," including any answer filed by a defendant. *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). A court may enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* at 54.

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints are "accorded an extra degree of solicitude," they nevertheless must satisfy the pleading standard. *See Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan.

15, 2009) (internal quotation marks omitted) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. June 23, 1997)).

### III.    Analysis

Defendant MB&W has moved for judgment on the pleadings under Rule 12(c) as to all counts against it.  The amended complaint asserts a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count 12), as well as various state-law claims (Counts 2, 3, 6, 7, 9, 10) against MB&W related to its alleged attempts to collect plaintiff's Verizon debt and its reporting of the debt to consumer reporting agencies.  The Court will first address statutory preemption and then discuss the remaining claims.

#### A.    Preemption Under the Fair Credit Reporting Act

The complaint asserts a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against defendant Jefferson Capital alone.  Although not asserted as a claim against MB&W, the complaint alleges that MB&W engaged in credit-reporting activities prohibited by the FCRA.  The complaint then uses those allegations as the basis for several state-law claims.

The FCRA imposes responsibilities on three types of entities:  (1) users of consumer reports, (2) consumer reporting agencies, and (3) furnishers of information.  *See Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. 2004).  According to the complaint, MB&W is a furnisher of information.  Its responsibilities in connection with providing information to consumer reporting agencies is therefore governed by 15 U.S.C. § 1681s–2.  *See id.*  Section 1681s–2 imposes two duties upon such furnishers of information:  "[T]he duty to provide accurate information [§ 1681s–2(a)] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s–2(b)]."  *Id.*

The FCRA contains two preemption provisions:  § 1681t(b) and § 1681h(e).  Although

there is some debate among the courts over the relationship of the provisions to each other, this

Court has previously found that § 1681h(e) only applies when "the cause of action is based on

information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on

information disclosed by a user of a consumer report to or for a consumer against whom the user

has taken adverse action, based in whole or in part on the report." *Islam v. Option One Mortg.*

*Corp.*, 432 F. Supp. 2d 181, 193-94 (D. Mass. 2006) (internal quotation marks omitted).

Therefore, when a defendant is solely a "furnisher of information," only § 1681t(b) applies. *Leet*

*v. Cellco P'ship*, 480 F. Supp. 2d 422, 430 (D. Mass. 2007).

Section 1681t(b) provides, in relevant part, as follows:

No requirement or prohibition may be imposed under the laws of any
State . . . with respect to any subject matter regulated under . . . section 1681s–2
of this title, relating to the responsibilities of persons who furnish information to
consumer reporting agencies.

15 U.S.C § 1681t(b)(1)(F).

Because all of the state-law claims asserted here concerning credit reporting stem from,

or relate to, the subject matter of § 1681s (that is, the responsibilities of furnishers of information

to consumer reporting agencies), all of those claims fall squarely within the plain language of

§ 1681t(b)(1)(F) and are therefore preempted. 15 U.S.C. §§ 1681s–2, 1681t(b)(1)(F); *see also*

*Islam*, 432 F. Supp. 2d at 194 (holding that a negligence claim was preempted by the FCRA to

the extent it relied on defendant's alleged negligence in reporting information to credit agencies).

Accordingly, the state-law claims for slander of credit/defamation (Count 6), negligence

(Count 7), tortious interference with prospective business relations (Count 9), and negligent

infliction of emotional distress (Count 10) will be dismissed as to MB&W. The state-law claims

for violation of Mass. Gen. Laws ch. 93A (Counts 2 and 3) and intentional infliction of

emotional distress (Count 10) are alleged as having some basis in collection activities, rather

than solely furnishing information, and will therefore be addressed separately.

### B.    Violation of the Fair Debt Collection Practices Act (Count 12)

Count 12 asserts a claim for violation of the Fair Debt Collection Practices Act.  The FDCPA creates a private cause of action.  15 U.S.C. § 1692k(d).  In order to prevail on an FDCPA claim, a plaintiff must prove that (1) he was the object of collection activity arising from consumer debt, (2) defendants are "debt collectors" as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA.  *See McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008).  The statute of limitations for these actions bars claims not brought within one year of the violation.  15 U.S.C. § 1692k(d); *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) ("[T]he statute of limitations [period] in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered.").

The complaint alleges that MB&W violated four provisions of the FDCPA:  (1) a violation of § 1692e, which prohibits false, deceptive, or misleading representations; (2) a violation of § 1692g, which sets out various requirements for debt collectors when debts are disputed; (3) a violation of § 1692f, which prohibits unfair or unconscionable means in debt collection; and (4) a violation of § 1692d, which prohibits harassment or abuse of consumers by debt collectors.

MB&W contends that the complaint does not sufficiently allege any violations of any provisions of the FDCPA that occurred within the one-year statute of limitations period (that is, after August 25, 2024).  It is true that the only allegation in the complaint directed at MB&W with any specific timeframe is an allegation that plaintiff sent several defendants, including MB&W, a Chapter 93A demand letter on January 16, 2023.  (Am. Compl. ¶ 56).  That date is far outside the limitations period.

In a separate section, titled "Systematic Concealment of the Arbitration Clause as Predatory Design," the complaint sets out a timeline that includes the allegation "January 2023-August 2025 (Thirty Months) . . . [d]efendants placed debt with multiple collectors, reported to CRAs, and pursued collection . . . ." (*Id.* ¶ 80).  The complaint does not specify that any specific defendant took any specific action during that period.  That paragraph contains the only allegation that suggests MB&W engaged in collection activities within the one-year statute of limitations window.

Because the Court must view all factual allegations, and make all reasonable inferences, in the light most favorable to the non-moving party, and because the complaint must be liberally construed due to plaintiff's *pro se* status, it will construe that paragraph as alleging that MB&W improperly attempted to collect defendant's debt, and improperly reported his debt to collection agencies, as late as August 2025.

Viewed in that light, the complaint plausibly alleges that a violation of § 1692e occurred within the one-year limitations period.  That provision prohibits "false, deceptive, or misleading representation . . . in connection with the collection of any debt."  15 U.S.C. § 1692e.  In relevant part, it proscribes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  *Id.* § 1692e(8).  Failing to disclose a known dispute when reporting a debt to a credit reporting agency falls within the scope of § 1692e(8). *See Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018).

Because all of the FDCPA claims are pleaded in a single count of the complaint, and because the § 1692e claim will survive the motion for judgment on the pleadings, the Court will

10

deny MB&W's motion as to Count 12.  *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th

Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of

*parts* of claims; the question at this stage is simply whether the complaint includes factual

allegations that state a plausible claim for relief."); *see also* 5B Wright & Miller's Federal

Practice & Procedure § 1358 (4th ed. 2026).  Of course, any alleged violations by MB&W of the

FDCPA that fall outside the limitations period cannot give rise to recovery and may be dismissed

at summary judgment.  *Rotkiske*, 589 U.S. at 10.[3]

### C.   Intentional Infliction of Emotional Distress (Count 10)

To state a claim for intentional infliction of emotional distress under Massachusetts law,

the complaint must allege the following:

> (1) that the actor intended to inflict emotional distress or that he knew or should
> have known that emotional distress was the likely result of his conduct; (2) that
> the conduct was extreme and outrageous, was beyond all possible bounds of
> decency[,] and was utterly intolerable in a civilized community; (3) that the
> actions of the defendant were the cause of the plaintiff's distress; and (4) that the
> emotional distress sustained by the plaintiff was severe and of a nature that no
> reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citations and internal quotation

marks omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir.1995); *see also Borden v.*

*Paul Revere Life Ins. Co.*, 935 F.2d 370, 380 (1st Cir. 1991).

The standard of proof for extreme and outrageous behavior is very high.  "[L]iability has

been found only where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

---

[3] To be sure, there is substantial doubt as to whether the complaint was timely filed.  MB&W, in its answer, asserts that plaintiff's account was closed by MB&W in 2022 and that it never contacted any credit-reporting agencies.  (MB&W Answer ¶ 56).  But because the Court cannot resolve factual disputes at this stage and must view the allegations in the light most favorable to plaintiff, the Court cannot now decide whether plaintiff's allegations of MB&W's continued involvement are accurate or not.

utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1986) (quoting Restatement (Second) of Torts § 46 cmt.d (Am. L. Inst. 1965)).

Here, the complaint alleges that the extreme and outrageous conduct included "aggressive[ly]" attempting to collect a fraudulent debt, reporting the false debt to credit-reporting agencies, failing to note that the debt was disputed, and knowingly destroying plaintiff's credit score and housing opportunities. (Am. Compl. ¶ 150).

The allegations of the complaint fall well short of the high standard imposed by Massachusetts law. First, and as noted, the allegations concerning reporting the debt to credit agencies is preempted by the FCRA. Second, the complaint does not plead any specific factual allegations supporting the conclusory statement that the collection efforts were "aggressive." It merely alleges repeated contacts, notices, and calls from the debt collectors. (*Id.* ¶ 51). It does not allege any specific facts that might support a claim of extreme conduct. Without more, that cannot be described as "utterly intolerable in a civilized community." *Foley*, 400 Mass. at 99. Accordingly, the claim for intentional infliction of emotional distress will be dismissed.

### D.    Violation of Mass. Gen. Laws ch. 93A (Count 2) and Mass. Gen. Laws ch. 93, § 49 (Count 3)

In Count 2, the complaint alleges that MB&W engaged in unfair and deceptive actions in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 9. In Count 3, the complaint separately contends that MB&W violated Massachusetts debt-collection statute, Mass. Gen. Laws. ch. 93, § 49. Section 49 itself contains no private right of action. *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014). Instead, claims based on the statute are "only cognizable insofar as they served a basis for derivative liability under Mass. Gen. Laws. Ch. 93A." *Id.* (citing *Kassner v. Chase Home Fin., LLC,* 2012 WL 260392, at *9 (D.

Mass. Jan. 27, 2012)).  Accordingly, Count 3 will be dismissed, and the Court will consider the alleged violations of § 49 as potentially relevant to a Chapter 93A claim.

Chapter 93A "is a 'statute of broad impact,' which forms a 'comprehensive substantive and procedural business and consumer protection package.'" *Leardi v. Brown*, 394 Mass. 151, 159 (1985) (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975)).  "[A] violation of the FDCPA constitutes a per se violation of ch. 93A." *French v. Corp. Receivables, Inc.*, 489 F.3d 402, 403 n. 1 (1st Cir. 2007) (citing *Barnes v. Fleet Nat. Bank*, 370 F.3d 164, 176 (1st Cir. 2004)).

To be valid, a Chapter 93A claim must allege that the plaintiff suffered an actual injury. "A misrepresentation of legal rights in a consumer contract may indeed be per se 'unfair' or 'deceptive' under § 2 of G.L. c. 93A.  But a plaintiff seeking a remedy under G.L. c. 93A, § 9, must demonstrate that even a per se deception caused a loss." *Hershenow v. Enterprise Rent–A–Car Co. of Boston,* 445 Mass. 790, 798 (2006) (internal citation omitted).  Such a loss may be either economic or non-economic.  *Id.* at 802.

Here, the complaint alleges that MB&W's failure to report the dispute to credit-reporting agencies caused harm to his credit score, which, in turn, caused him economic harm through credit denials, higher interest rates on credit cards, and housing denials.  That is sufficient to allege a plausible economic loss under Chapter 93A.  *See e.g.*, *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 156 (D. Mass. 2014) (holding that an accumulation of interest, damage to credit, and assessment of late payment charges was economic harm). Accordingly, the Chapter 93A claim will not be dismissed.

## IV.    Conclusion

For the foregoing reasons, the motion of defendant McCarthy, Burgess & Wolff, Inc. for judgment on the pleadings is DENIED as to Counts 2 and 12 and otherwise GRANTED.

13

**So Ordered.**

/s/  F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  August 6, 2026                    United States District Judge