**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **GHODRAT FARAHANI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **25-cv-13285-FDS** |
| **VERIZON WIRELESS** | ) | |
| **SERVICES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON MOTION OF PLAINTIFF FOR SUMMARY
JUDGMENT ON COUNT 1 AND MOTIONS OF DEFENDANTS CELLULAR SALES
OF MASSACHUSETTS, LLC AND VERIZON WIRELESS SERVICES, LLC
<u>TO STRIKE AND COMPEL ARBITRATION</u>**

**SAYLOR, J.**

This is a lawsuit filed by a consumer against a cellphone service provider and various

related entities.  Plaintiff Ghodrat Farahani alleges that defendants Cellular Sales of

Massachusetts, LLC and Verizon Wireless Services, LLC fraudulently obtained his signature on

multiple agreements concerning a cellphone installment plan.  Those documents included two

mandatory arbitration provisions, one for Cellular Sales and one for Verizon.  Plaintiff further

alleges that defendants Jefferson Capital Systems, LLC; McCarthy, Burgess & Wolff, Inc.; and

Credit Control, LLC then unlawfully attempted to collect on that invalid debt.  He is proceeding

*pro se*.

Plaintiff has moved for summary judgment on Count 1, which seeks a declaratory

judgment that no enforceable arbitration clause governs this dispute.  Defendants Verizon and

Cellular Sales have moved to strike portions of plaintiff's supporting affidavit and to compel

arbitration or, in the alternative, dismiss for failure to state a claim upon which relief can be

granted.  For the following reasons, plaintiff's motion for summary judgment will be denied;

defendants' motion to strike will be granted in part and denied in part; and defendants' motion to

compel arbitration will be denied without prejudice pending resolution of factual disputes

concerning contract formation.

## I.      Background

The following facts are undisputed unless otherwise noted.

### A.      The Parties

Ghodrat Farahani is an individual who resided in Rehoboth, Massachusetts, during the

relevant time in 2021.  (Farahani Aff. ¶ 4, Dkt. No. 21).

Verizon Wireless Services, LLC is a limited liability company that sells cellular services

and related equipment.  (White Decl. ¶ 3, Dkt. No. 30-1).

Cellular Sales of Massachusetts, LLC is a limited liability company that operates retail

electronics stores in Massachusetts.  (*Id.*).  Cellular Sales is a Verizon retailer.  (*Id.*).

Jefferson Capital Services, LLC is a limited liability company that engages in debt

collection.  (Am. Compl. ¶ 14, Dkt. No. 10; Jefferson Answer ¶¶ 14, 50, Dkt. No. 31).  It held

and attempted to collect Farahani's debt to Verizon.  (Jefferson Answer ¶ 50).

McCarthy, Burgess & Wolff, Inc. ("MB&W") is a corporation that at some point held

Farahani's debt for collection.  (Am. Compl. ¶ 15; MB&W Answer ¶ 15, Dkt. No. 19).

Credit Control, LLC is a limited liability company that collects debts in Massachusetts.

(*Id.* ¶ 16; Credit Control Answer ¶ 16, Dkt. No. 17).  At some point it held Farahani's debt for

collection.  (Credit Control Answer ¶ 50).

### B.      Relevant Factual Background

On June 11, 2021, Ghodrat Farahani went to a store in Swansea, Massachusetts, to

address his ongoing problems with cellular service at his home.  (Farahani Aff. ¶ 10).  That store

was operated by Cellular Sales, although it retailed Verizon products and displayed Verizon branding. (*Id.* ¶¶ 10, 47).

According to Farahani, a store employee named Liam Gardiner came over to assist him. (*Id.* ¶ 12). Farahani told Gardiner that he wanted to purchase a Verizon service plan to use with his current phone. (*Id.* ¶ 13). After examining the phone, Gardiner stated that his phone was not compatible with Verizon service and that he would need a different phone. (*Id.*). Farahani explained that he did not want to purchase a new phone and began to leave. (*Id.* ¶¶ 14-15). At that point, a man "who appeared to be the manager" approached. (*Id.* ¶ 16). The manager told Farahani that he was eligible for a "free" phone that he "d[id not] have to pay for" so long as he signed up for Verizon service. (*Id.*). Farahani agreed. (*Id.* ¶ 18).

Gardiner then presented Farahani with an electronic tablet. (*Id.* ¶ 19). Farahani contends that the "screen was completely blank except for a signature line at the bottom." (*Id.*). After Farahani inquired if he could get a copy of what he was signing, Gardiner allegedly explained that he would later be emailed a copy. (*Id.* ¶¶ 20-21). According to Farahani, he signed the blank screen under the belief that he was acknowledging receipt of the free phone and signing up for Verizon service. (*Id.* ¶ 27). He maintains that he never received an email with the terms of the agreement and that no one in the store told him that he could view the terms and conditions online. (*Id.* ¶¶ 29-31).

Cellular Sales contends that it was regular practice for its employees to capture customers' signatures on an electronic tablet. (Mills Decl. ¶ 3, Dkt. No. 30-4). It maintains that at no point could its tablet have displayed a standalone blank signature pad. (*Id.* ¶ 4). Rather, a customer must scroll or swipe through the Cellular Sales bill of sale and the Verizon loan agreement before reaching the signature line at the end. (*Id.* ¶ 3).

3

Defendants further contend that by signing the tablet Farahani agreed to be bound by four agreements:  (1) a Verizon installment loan agreement with a total obligation of $565; (2) a Verizon customer agreement with an arbitration provision; (3) a Cellular Sales bill of sale; and (4) a Cellular Sales dispute resolution agreement with an arbitration provision.  (*Id.*).

The Verizon installment loan agreement identifies Farahani as the borrower, notes the date of the transaction as June 11, 2021, and identifies Cellular Sales at the Swansea location as the seller.  (Verizon Loan Agreement 1, Dkt. No. 30-6).  The agreement provides a payment schedule for a $565 loan over the course of 24 months.  (*Id.*).  Farahani's signature, dated June 11, 2021, appears on a signature page that states:  "I agree to all of the terms of the Installment Loan Agreement(s) . . . including my obligation to make monthly payments as described . . . ." (*Id.* at 5).  Also on the signature page is the statement "I agree to the Verizon Customer Agreement (CA), including . . . settlement of disputes by arbitration instead of jury trial."  (*Id.*)

The Verizon customer agreement contains a provision stating that "you and Verizon both agree to resolve disputes only by arbitration or in small claims court . . . you understand that by this agreement you are giving up your right to bring a claim in court or in front of a jury." (Verizon Customer Agreement 6, Dkt. No. 30-7).

The Cellular Sales bill of sale lists the $565 loan amount.  (Cellular Sales Bill of Sale 1, Dkt. No. 30-2).  It includes an "acknowledgement" that all disputes will be governed by the mandatory arbitration provision in the Cellular Sales dispute resolution agreement.  (*Id.* at 2-3).

The Cellular Sales dispute resolution agreement contains a mandatory arbitration provision.  (Cellular Sales Dispute Resolution Agreement, Dkt. No. 30-3).

Farahani received the first billing statement from Verizon later that month.  (Farahani Aff. ¶ 37).  The billing statement included a line item for "device payment (1 of 24)" costing

$23.58.  (Verizon Billing Statement, Dkt. No. 10-1).  Farahani was unsuccessful in his attempts to return the phone and continued to receive bills for it that he did not pay.  (Farahani Aff. ¶¶ 45-56).  Eventually, the debt was sent to collection agencies.  (*Id.* ¶ 56).

### C.    Procedural Background

On August 25, 2025, plaintiff filed this action against all defendants in Massachusetts Superior Court.  (State R. 6, Dkt. No. 7).  Defendants then removed the case to this court. (Notice of Removal, Dkt. No. 1).

On November 13, 2025, plaintiff filed an amended complaint asserting thirteen counts: (1) declaratory judgment that the arbitration clause is unenforceable against Verizon and Cellular Sales; (2) unfair or deceptive practices in violation of Mass. Gen. Laws ch. 93A against all defendants; (3) unfair debt collection practices in violation of Mass. Gen. Laws ch. 93, § 49 against Jefferson Capital, MB&W, and Credit Control; (4) fraud/intentional misrepresentation against Verizon and Cellular Sales; (5) negligent misrepresentation against Verizon and Cellular Sales; (6) slander of credit/defamation against all defendants; (7) negligence against all defendants; (8) breach of contract against Verizon and Cellular Sales; (9) tortious interference with prospective business relations against all defendants; (10) intentional and negligent infliction of emotional distress against all defendants; (11) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, against Verizon and Cellular Sales; (12) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, against Jefferson Capital, MB&W, and Credit Control; and (13) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, against Jefferson Capital.  (Am. Compl. at 11-26).

Plaintiff has moved for partial summary judgment on Count 1.  He seeks a declaratory judgment that no valid arbitration agreement exists between himself and Cellular Sales and Verizon.  He also submitted an affidavit in support of that motion.

Cellular Sales and Verizon then filed a motion to compel arbitration or, alternatively, to dismiss for failure to state a claim. They also moved to strike plaintiff's affidavit or, alternatively, an objection to its consideration.[1]

## II.   **Standard of Review**

Plaintiff's motion for summary judgment on Count 1 seeks a declaratory judgment that no enforceable arbitration agreement governs this dispute. The cross-motion of defendants Verizon and Cellular Sales to compel arbitration seeks to enforce such an agreement. The same summary-judgment standard governs both motions. *See Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021) ("[D]istrict courts should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA.").[2]

Under the summary-judgment standard, the court "assess[es] the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the

---

[1] MB&W filed a motion for judgment on the pleadings as to all counts against it. That motion will be addressed in a separate memorandum and order.

[2] Section 4 of the Federal Arbitration Act ("FAA") provides the basis for review of motions to compel arbitration. 9 U.S.C. § 4. It provides that

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

*Id.* That language "commands that district courts ordinarily apply the summary-judgment standard" in evaluating motions to compel arbitration under the FAA. *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 168 (1st Cir. 2022) (citing *Air-Con, Inc.*, 21 F.4th at 175).

nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."
*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation modified).
In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor
of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a
properly supported motion for summary judgment is made, the adverse party must set forth
specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250 (1986) (citation modified). The nonmoving party may not simply "rest upon
mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.*
at 256-57.

"Generally, in deciding cross-motions for summary judgment, each party's motion must
be examined on its own merits, and in each case all reasonable inferences must be drawn against
the party whose motion is under consideration. But where, as here, the motion and cross-motion
seek a determination of the same issues, the Court may consider them together." *ExteNet Sys.,
Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) (citation modified); *see
also Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 496 (D.N.H. 1996) ("Because
the issues raised in the motion and cross-motion are identical, the court will discuss and resolve
[them] in unison.").

In addition, any document filed by a *pro se* party is "to be liberally construed." *Erickson
v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se*
litigants, however, still must comply with the Federal Rules of Civil Procedure. *Thomas v.
Norris*, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006); *see also Posadas de P.R., Inc. v.
Radin*, 856 F.2d 399, 401 (1st Cir. 1988) ("Nonetheless, even a pro se litigant must meet the
specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific

facts must be provided to defeat a motion for summary judgment.").

### III.    Defendants' Motion to Strike

As a threshold issue, the Court must decide what evidence it may consider in evaluating the motions concerning arbitration. In support of his motion for summary judgment, plaintiff submitted an affidavit attesting to his version of events.[3] Defendants Verizon and Cellular Sales have moved to strike certain statements in that affidavit as being irrelevant, conclusory, speculative, reflecting plaintiff's subjective belief, or containing inadmissible hearsay statements.

For the most part, plaintiff's affidavit sets out admissible facts that are based on his personal knowledge and that set out what happened, from his perspective, at the Cellular Sales store on June 11, 2021. Plaintiff may also attest to his own state of mind at the time, even if that state of mind is not conclusive as to what a reasonable person would have believed under the same circumstances.

Nonetheless, certain portions of the affidavit are problematic. Several paragraphs represent plaintiff's experience with a different carrier, which are likely irrelevant or inadmissible under Fed. R. Evid. 403. (*See, e.g.*, Farahani Aff. ¶¶ 5-9). Because they are irrelevant to the present motion, the Court will simply disregard them. Other paragraphs—such as those describing what would have happened if the store employee had said something different (*id.* ¶¶ 26, 32); what plaintiff would have done had he seen or read the documents (*id.* ¶¶ 40, 72 (sentence 4)); or what he would have done if the terms had been disclosed to him (*id.* ¶ 75)—appear to call for speculation and will be struck. And three paragraphs that purport to describe the malevolent intentions of defendants (*id.* ¶¶ 77-79) are improper and will be struck.

---

[3] The motion to strike addresses only plaintiff's original affidavit (Dkt. No. 21). He later filed a supplemental affidavit (Dkt. No. 39-2). For the sake of simplicity, this order will only address the original affidavit.

(*E.g.*, *id.* ¶ 77 ("[T]hey wanted to lock me into a long-term contract . . . .")).  Although his affidavit is also at times argumentative and conclusory, the Court will simply disregard any such statements.  (*E.g.*, *id.* ¶ 85 ("Because I refused to pay for . . . a loan I never agreed to, Defendants reported the account as delinquent to credit bureaus.")).

Accordingly, the motion to strike will be granted as to paragraphs 26, 32, 40, 72 (sentence 4), 75, and 77-79, and otherwise denied.

## IV.    Enforceability of the Arbitration Agreements

### A.    Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, governs the enforcement of written arbitration agreements implicating interstate commerce.  "Congress enacted the FAA in response to widespread judicial hostility to arbitration."  *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  Section 2 is the "primary substantive provision of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  It provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

The Supreme Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'"  *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone*, 460 U.S. at 24; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  In line with those principles, "courts must place arbitration agreements on an equal footing with other contracts."  *Id.*  They must also "'rigorously enforce' arbitration agreements according to their terms."  *Italian Colors Rest.*, 570

U.S. at 233 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

"The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. § 2).  That savings clause allows arbitration agreements to be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687(1996)).

A court's "first step" when facing a motion to compel arbitration is to determine whether a valid arbitration agreement exists.  *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021).  That is because, under the FAA's "contract-based philosophy," a person cannot waive his right to adjudication without actually agreeing to do so.  *Id.*; *see also National Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018) ("Though a person may, by contract, waive his or her right to adjudication, *see* 9 U.S.C. § 2, there can be no waiver in the absence of an agreement signifying an assent." (citation modified)).  Courts apply state contract law to that determination.  *Rivera-Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 207 (1st Cir. 2019).  The party moving to compel bears the burden of showing that such an agreement exists.  *Id.*

### B.    Contract Formation

The parties dispute whether a contract was formed—that is, whether plaintiff agreed to arbitration in the first instance.[4]  That question goes to the validity of the arbitration agreement

---

[4] At times, plaintiff frames his argument as fraud in the factum.  The factual issue is the same—whether he had reasonable notice of the arbitration agreement.

itself and must be decided by the court. *See National Fed'n of the Blind*, 904 F.3d at 82 (finding plaintiffs' "argu[ment] that they could not have accepted the terms of a contract to arbitrate that was never communicated to them" went to "the very basic element of contract formation" and must be decided by the court).[5]

Under Massachusetts law, a valid contract requires "both reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021).[6] The standard for reasonable notice is low. *See Bourque v. Rollins, Inc.*, 764 F. Supp. 3d 11, 17 (D. Mass. 2025). A party need only provide "some minimal level of notice . . . that statutory claims are subject to arbitration." *Id.* (citing *Ellerbee v. GameStop, Inc.*, 604 F. Supp. 2d 349, 354 (D. Mass. 2009)). The test is objective—that is, the question is "whether, under the totality of the circumstances, the [party's] communication would have provided a reasonably prudent [person] notice of the waiver of the right to proceed in a judicial forum." *Id.* (citing *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 554 (1st Cir. 2005)).

Plaintiff contends that he was never informed that an arbitration agreement existed, was not made aware of any such terms and conditions, and was never provided the opportunity to review the substance of the document he was signing. He also contends that the store employee declined to provide a copy when he requested one. Rather, he signed a blank screen with "no

---

[5] Under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), "[a] challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator." *National Fed'n of the Blind*, 904 F.3d at 81 (citing *Prima Paint Corp.*, 388 U.S. at 402-04)). That doctrine implicates challenges such as fraudulent inducement or illegality that "renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). It does not reach the antecedent question of whether a contract "was ever concluded." *Id.* at 444 n.1.

[6] The parties have not raised any choice-of-law issues and assume that Massachusetts law applies. This Court will do so as well. *See Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003) ("Where parties have agreed to the choice of law, this court is free to forego an independent analysis and accept the parties' agreement." (citation modified)).

11

text, no buttons, no scroll bar, no hyperlinks, no 'I agree' button, no pop-ups, no summary of any terms, no price, no loan amount, no contract terms, no arbitration clause, and no delegation clause visible anywhere on the screen." (Farahani Aff. ¶ 98).

In response, defendants contend that it was impossible for plaintiff to have only been presented with a blank screen, as the software required scrolling or swiping past the terms of the agreements. Defendants have also submitted copies of the agreements they allege that plaintiff electronically signed.[7]

At this stage, there is a genuine dispute of fact as to what plaintiff viewed on the electronic tablet. The Court cannot credit defendants' contention that it was impossible to present a blank signature pad without discrediting the testimony of plaintiff, who contends that it happened. *See Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014) ("[A] judge must not engage in making credibility determinations or weighing the evidence at the summary judgment stage . . . ."); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) (reversing an order compelling arbitration because the plaintiff attested that she had never electronically signed any agreement with her employer despite arbitration agreements appearing to bear her electronic signature). The fact that plaintiff's signature appears on a pdf version of the installment loan agreement does not reveal what he saw on the touchscreen when he electronically signed. Nor can the Court credit plaintiff's allegation that he signed a blank screen without discrediting defendants' contention that such a display was technologically impossible.

In short, what plaintiff saw or did not see on the electronic tablet goes to the heart of the issue of reasonable notice. In general, a person is bound by a contract that he signs, even if he

---

[7] It does not appear, based on the exhibits presented, that plaintiff actually signed all four of the relevant agreements. (*E.g.*, Cellular Sales Bill of Sale 3). Nonetheless, for present purposes, that issue is not material.

neglects to read it.  Thus, a person may have reasonable notice of an arbitration provision simply by "agreeing" to or "accepting" terms of service without viewing any term related to arbitration or even scrolling or swiping past the terms.  *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 9 (1st Cir. 2021); *see also Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 44 (1st Cir. 2012) ("Typically, one who signs a written agreement is bound by its terms whether he reads and understands them or not." (citation modified)).  If, as defendants contend, plaintiff scrolled past the agreements, then he had reasonable notice of their terms, including the arbitration clauses.

Nonetheless, "a party cannot enter into a contract to arbitrate when it does not know or have reason to know the basic terms of the offer." *National Fed'n of the Blind*, 904 F.3d at 83. A person does not have reasonable notice of an arbitration provision where there is "'zero hint' that terms and conditions (specifically, an arbitration agreement) applied." *Id.* at 84 (declining to compel arbitration where plaintiffs enrolled in a loyalty program with the assistance of a sales associate because there was no evidence that they had read or were otherwise made aware of terms of the loyalty program and they had no way of accessing the terms).  If, as plaintiff contends, he signed a blank signature pad without being made aware that there were *any* terms and conditions, then he did not have reasonable notice that an arbitration clause might apply.[8]

Thus, on these facts, the Court cannot resolve whether the basic elements of contract formation of the arbitration agreement have been met.

---

[8] Defendants cite *Bourque v. Rollins, Inc.*, 764 F. Supp. 3d 11 (D. Mass. 2025), in support of its contention that plaintiff is bound by his signature on an arbitration agreement despite not have an opportunity to review the terms before signing.  That case is distinguishable.  In *Bourque*, plaintiff signed an agreement that "stated, in clear language, under the bolded heading **AGREEMENT TO ARBITRATE**," that the parties were agreeing to arbitrate any dispute arising from the plaintiff's employment as defined by the company's dispute-resolution policy.  *Id.* at 17.  The court found that although plaintiff did not have the opportunity to review the dispute-resolution policy before signing, he had reasonable notice that an employment-related claim would be subject to arbitration.  *Id.* Here, according to plaintiff's account, he never saw any terms of any agreement, much less ones that highlighted the existence of a dispute-resolution policy.

## C.       **Plaintiff's Other Grounds for Lack of Arbitrability**

Plaintiff has moved for summary judgment as to arbitrability on several grounds other than formation.  He also contends that defendants waived any right to arbitrate; that the clause is procedurally and substantively unconscionable; and that non-signatory defendants have no right to enforce the arbitration clause.

First, plaintiff contends that defendants waived their right to pursue arbitration.  In the context of arbitration, "there is a strong presumption *against* inferring waiver—so strong that any 'reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration.'"  *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 64 (1st Cir. 2021) (quoting *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005)).

In assessing whether a party has waived its right to arbitration, a court should be guided by the following non-exhaustive factors:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the litigation machinery has been substantially invoked and the parties are well into preparation of a lawsuit by the time an intention to arbitrate is communicated; (3) whether there has been a long delay and trial is near at hand; (4) whether the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim; (5) whether discovery not available in arbitration has occurred; and, (6) whether the party asserting waiver has suffered prejudice.

*FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (citation modified).  "These factors should be considered to the extent that they clarify whether [movant] 'knowingly relinquished the right to arbitrate by acting inconsistently with that right.'"  *Buruk v. Experian Info. Sols., Inc.*, 732 F.Supp.3d 165, 171 (D. Mass. 2024) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)).

Plaintiff contends that the failure of Verizon and Cellular Sales to respond to his Chapter 93A demand letters constitutes waiver.  But Chapter 93A demand letters are merely a

14

prerequisite for filing a claim under the statute; they do not create a duty for defendants to respond. *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 506 (D. Mass. 2012). Accordingly, no litigation activity had commenced prior to the filing of the complaint in this case. The motion to compel arbitration was defendants' first responsive pleading, discovery in this case has not begun, and defendants have not filed any counterclaims against plaintiff. They seemingly have not taken any actions inconsistent with arbitration. The *FPE* factors therefore weigh against finding waiver, and certainly do not defeat the strong presumption against it.

Plaintiff further asserts that the arbitration clause is unconscionable. Under Massachusetts law, "[u]nconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party. . . ." *Waters v. Min Ltd.*, 412 Mass. 64, 68 (1992). An unconscionable contract is one "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." *Id.* at 69.

"[T]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." *Machado v. System4 LLC*, 471 Mass. 204, 218 (2015) (citations and internal quotation marks omitted).

Here, plaintiff contends that the arbitration clause was procedurally unconscionable because he had no opportunity to review the agreement that he was signing when he was presented with a blank screen. As discussed above, those contentions rely on disputed material facts. The Court cannot grant summary judgment on that basis. Because the Court cannot grant summary judgment on the basis of procedural unconscionability, it need not reach the issue of

15

substantive unconscionability at this time.

Finally, plaintiff contends that Verizon and Jefferson Capital, as non-signatories to the arbitration agreement, cannot enforce the arbitration agreement.  It is true that non-signatories generally cannot enforce arbitration agreements to which they are not a party.  *See, e.g., Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 62 n.2 (1st Cir. 2003).  Verizon, however, is a signatory to one of the agreements containing an arbitration clause that is at issue. (Verizon Loan Agreement).  Accordingly, depending on the validity of the arbitration clause, Verizon has the right to enforce it.

Jefferson Capital, meanwhile, is not moving to enforce the arbitration agreement, and it is not a defendant in Count I.  Whether or not it is a signatory to an arbitration clause is therefore irrelevant.

***

In sum, plaintiff has not met his burden to show that no genuine dispute of fact exists as to the parties' agreement to arbitrate.  His motion for summary judgment on Count 1 will therefore be denied.

Defendants have likewise failed to show that no genuine dispute of fact exists.  Section 4 of the FAA provides that if there is a genuine dispute about arbitrability, then "the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  The First Circuit has directed that a "district court should not rule on the motion to compel arbitration until it resolves any factual disputes that require resolution before it can be determined whether the parties agreed to arbitrate."  *Air-Con, Inc.*, 21 F.4th at 176.  The Court will therefore not rule on defendants' motion to compel arbitration at this time.

V.    **Conclusion**

For the foregoing reasons, the motion of plaintiff for summary judgment on Count 1 is

16

DENIED without prejudice; the motion of defendants Cellular Sales of Massachusetts, LLC and

Verizon Wireless Services, LLC to strike is GRANTED as to paragraphs 26, 32, 40, 72 (sentence

4), 75, and 77-79 of plaintiff's original affidavit (Dkt. No. 21), and otherwise DENIED; and the

motion of defendants Cellular Sales of Massachusetts, LLC and Verizon Wireless Services, LLC

to compel arbitration is DENIED without prejudice to its renewal after resolution of predicate

factual disputes concerning contract formation.

**So Ordered.**


/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  August 6, 2026                    United States District Judge